**NEWRIVER, INC., Plaintiff,**

v.

**MOBULAR TECHNOLOGIES, INC., Defendant.**

**Civil Action No. 05–12285–RCL.**

United States District Court, D. Massachusetts.

March 21, 2007.

Michael A. Albert, Ilan N. Barzilay, Wolf, Greenfield & Sacks, PC, Boston, MA, for Plaintiff, Newriver, Inc.

James A.G. Hamilton, Michael P. Twohig, Burns & Levinson LLP, Boston, MA, for Defendant, Mobular Technologies, Inc.

## MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION

LINDSAY, District Judge.

This is a patent infringement action brought by the plaintiff, NewRiver, Inc., a Massachusetts corporation, against the defendant, Mobular Technologies, a Delaware corporation. NewRiver, which describes itself as "a leading developer of technology for providing financial information in a useable format to investors and brokers," is the assignee of U.S. Patent number 6,122,635 ("the '635 patent") for Mapping Compliance Information Into Useable Format. NewRiver alleges that Mobular, a competitor of NewRiver in the area of providing financial information to investors and brokerages, offers to sell products and services that infringe the '635 patent.

██ A patent infringement action consists of two elements: "construing the patent and determining whether infringement occurred." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "The first is a question of law, to be determined by the court ... [t]he second is a question of fact, to be submitted to [the fact-finder]." *Id.* At issue now is the first step, commonly called "claim construction."

██ "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.

Cir.2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed.Cir. 2004)). For this reason, claim construction begins with the claims themselves, which "provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. In the absence of a clear statement by the patent applicant in the specification or file history that a special definition is to be used, *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996), the "words of a claim 'are generally given their ordinary and customary meaning.' " *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp.*, 90 F.3d at 1582). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Id.* at 1313; *see Innova*, 381 F.3d at 1116. To determine what "a person of skill in the art would have understood disputed claim language to mean," the court looks to several sources, including "the words of the claims themselves, the remainder of the specification [1], the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). As to the meaning of a particular term in a particular claim, the "context in which a term is used in the asserted claim can be highly instructive," and other claims of the patent "can also be valuable sources of

---

1. As "part of 'a fully integrated written instrument,' " *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed.Cir.2005) (en banc) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d at 967, 978 (Fed.Cir.1995), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)) "claims 'must be read in view of the specification of which they are a part.' " *Id.*, quoting *Markman*, 52 F.3d at 979. "The specification is the single best guide to the meaning of a

disputed term," *id.*, as it must describe the claimed invention in "full, clear, concise, and exact terms." 35 U.S.C. § 112, para. 1; *see Phillips*, 415 F.3d at 1316. Limitations that appear in the specification, however, should not be imported into the claims; "the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips*, 415 F.3d at 1323.

enlightenment as to the meaning of the claim term." *Id.* "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314–15. In some cases, construing a claim term, as that term would be understood by one skilled in the art, "involves little more than the application of the widely accepted meaning of commonly understood words. In such cases, general purpose dictionaries may be helpful." *Id.* at 1314. (citation omitted)

As set forth in the abstract, the patented invention here is a "system for providing access to compliance information" that acquires and extracts information as to particular securities from database sources, and provides access to computer-readable compliance information files. In essence, the invention allows for the acquisition and parsing of electronic data concerning securities to facilitate delivery of compliance information to investors in electronic form.

Mobular takes the position that nearly all lclaims of the '635 patent require human action. Mobular thus has requested construction to this effect of nearly every claim. NewRiver argues that, because neither the specification nor the language of the claims imposes a "human involvement" limitation, it would be legal error to read such a limitation into the claims. NewRiver also suggests that much of the '635 patent's claim language is clear on its face or consists of terms of art in the financial industry and thus readily obtainable from industry dictionaries. In these circumstances, so Newriver's argument goes, no special construction or rewording by the court is required.

■ I am largely in agreement with NewRiver and therefore conclude that, where the claim language is clear, no further construction is necessary. *See U.S.*

*Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed.Cir.1997):

"The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."

Bearing this caveat in mind, I provide a construction of claim terms as follows.

## 1) "computer-assisted method" (Preamble to Claim 1)

■ There are two disputes with respect to this term: whether this phrase, appearing in the preamble, should be read as a restriction of what the claim covers, and whether "computer-assisted" necessarily requires the participation of a human being.

■ As to the first question, whether the words of a preamble may be considered "limiting" depends on the function of the preamble. *See Catalina Marketing Int'l, Inc. v. Coolsavings. com, Inc.,* 289 F.3d 801, 808 (Fed.Cir.2002) (quoting *Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1305 (Fed.Cir.1999) and *Rowe v. Dror,* 112 F.3d 473, 478 (Fed.Cir. 1997)):

"In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim. Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"

Read in context, it is clear that the term "computer-assisted" is a critical feature of Claim I, in the absence of which, Claim 1 is structurally incomplete. Thus the preamble gives "life, meaning and vitality" to the claim. *Id.* "Computer-assisted," therefore, should be read as a limitation. *See id.*

As to the second question, I find nothing in the claim language, specification or elsewhere to indicate that the claim requires human involvement; a computer assisted method, for example, would well be understood by one skilled in the art to be one in which the computer assists another device. All that the claim term suggests is that the method is one that requires some activity by or with a computer.

After examining the term in context, *see Phillips,* 415 F.3d at 1314, I construe "computer-assisted method" to mean: *"a series of steps performed in part by a computer."*

### 2) "operator" (Claim 13)

 The only dispute regarding this term is whether the operator must be a human being. I conclude that in the context of the written description, *see id.* at 1313, the ordinary person skilled in the art would recognize that this term implies human involvement. As the patentee has not "clearly set forth an explicit definition of the term different from its ordinary meaning," *Tex. Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed.Cir.2002), I adopt the customary meaning of "operator."

I construe this term to mean: *"a person who performs a function with the use of a device or process."*

### 3) "identifying" (Claims 1, 5, 6, 7, 11, 13, 19, 20, 25)

 Acknowledging the circularity of the dictionary definition of this term, namely, "establishing the identity of," the plaintiff proposes that this term be defined as "establishing the presence of." The defendant proposes that the term means "action by a human to inspect and label." Each party asserts that its definition is the ordinary meaning of the term.

Relying on the dictionary definition, as the meaning that would be attributed to the term by the skilled artisan, and providing additional clarity, I construe the term "identifying" to mean: *"determining or establishing the presence or identity of."*

### 4) "portion" (Claims 1, 4, 6, 8)

 The parties have stipulated that this term means "some or all of an item." To the extent that this definition encompasses a whole item, it is inconsistent with the ordinary meaning of the word, and nothing in the patent itself suggests that the applicant meant to assign a meaning other than the customary meaning to the term. *Cf. Vitronics Corp.,* 90 F.3d at 1582 (court will respect applicant's use of a term in a manner inconsistent with customary meaning "as long as the special definition of the term is clearly stated in the patent specification or file history").

I construe the term to mean: *"a part of any whole."*

### 5) Stipulated terms

The parties have stipulated to the meanings of the following terms, which I now adopt:

**"compliance information" (Claims 1, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 18, 19, 21, 22, 23, 25, 26, 27, 29, 30):** *"certain information about a security that a government or a stock exchange requires be made available or delivered to an investor in that security, such as a prospectus"*

**"a database of EDGAR filings with the Securities and Exchange Commis-**

sion" (Claim 3): *"the SEC EDGAR database or a database or another entity, such as a private entity, containing such filings"*

"prospectus" (Claims 4, 27, 30): *"a document describing the chief features of a stock offering or mutual fund, for prospective[2] buyers, investors, or participants"*

"central index key" (Claim 5): *"the number the SEC assigns to a mutual fund issuer used to identify the issuer's securities information on EDGAR"*

"CUSIP number" (Claims 5, 28, 29): *"a unique identification number assigned to all stocks and registered bonds by the Committee on Uniform Securities Identification Procedures (CUSIP) which oversees the entire CUSIP system"*

"effective date of ... compliance information" (Claims 7, 11, 15): *"the calendar date on which the issuer intends the information to begin to be used to comply with statutes and/or SEC regulations"*

"amended compliance information item" (Claim 7): *"a filing by an issuer that amends previously filed compliance information"*

"index page" (Claim 26): *"a page to list, guide, point out, or otherwise facilitate reference to the page or pages on which each item is mentioned"*

"indexing ... based upon a CUSIP number for each mutual fund" (Claim 28): *"the number assigned to a mutual fund by CUSIP is placed on an index"*

### 6) Remaining terms

 As to the remaining terms, their ordinary meaning is "readily apparent," such that claim construction "involves little more than the application of the widely

accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. I will not, therefore, further define them.

### Conclusion

I will apply at trial the foregoing construction to the claims in dispute in this action.

SO ORDERED.

---

**2.** The chart of stipulated constructions submitted by the parties included the word "prospectus" in place of the word "prospective,"

which this court treats as a typographical error.