NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

(Serial No. 11/429,507)

## IN RE JASON ARTHUR TAYLOR, REBECCA ANN ZELTINGER, AND JOHN G. COSBY, JR.

---

2012-1006

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences

---

Decided: June 14, 2012

---

JASON ARTHUR TAYLOR, Technology Advancement Labs LLC, of Kensington, Maryland, pro se.

JOHN G. COSBY, Technology Advancement Labs LLC, of Kensington, Maryland, pro se.

REBECCA ANN ZELTINGER, Technology Advancement Labs LLC, of Kensington, Maryland, pro se.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexan-

dria, Virginia, for appellee David J. Kappos, Director, United States Patent and Trademark Office. With him on the brief were, MARY L. KELLY and ROBERT J. MCMANUS, Associate Solicitors.

———————————

Before LOURIE, DYK, and WALLACH, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Appellants Jason Arthur Taylor, Rebecca Ann Zeltinger, and John G. Cosby, Jr., (collectively, "Taylor") appeal from the decision of the Board of Patent Appeals and Interferences ("the Board") affirming the rejections of all pending claims of U.S. Patent Application No. 11/429,507 ("the '507 Application") as anticipated, obvious, and/or lacking adequate written description. *See Ex parte Taylor*, No. 2010-009465 (B.P.A.I. Mar. 28, 2011) ("*Board Decision*"), *reh'g denied*, (B.P.A.I. June 29, 2011). Because the Board correctly construed the pending claims of the '507 application and did not err in finding those claims unpatentable in view of the cited prior art, we *affirm*.

## BACKGROUND

The '507 Application discloses a cellulose-based dough that "can be used to form a variety of low-calorie foods." '507 Application at 4, ¶ 13. Instead of flour, which contributes significantly to the caloric content of conventional baked goods, the disclosed dough contains a mixture of cellulose, hydrocolloids (such as methylcellulose, xanthan gum, and hemicellulose), and other ingredients. According to the written description of the '507 Application, the disclosed dough can be used to make a variety of low-calorie foods, such as doughnuts, breads, crackers, cakes, sauces, and flavored dips that are "nearly, though not

completely, as savory and satisfying as their traditional, full-calorie counterparts." *Id.* at 7, ¶ 21. The '507 Application defines "low-calorie" as "a ≥50% caloric reduction as compared to the traditional version of the food per unit weight." *Id.* at 2, ¶ 3.

Taylor filed the '507 Application with 36 original claims on May 5, 2006. The examiner issued a non-final office action on August 5, 2008, and Taylor responded on December 6, 2008 by amending claims 1–15, cancelling claims 16–36, and adding new claims 37–58. All of the pending claims except independent claim 58 depend, directly or indirectly, from independent claim 1. Claim 1 is representative and, as amended, reads as follows:

> 1. A mix for making *low-calorie*, *palatable* food or food components comprising by dry weight at least about 30% of fiber that is at least 50% cellulose, and an effective amount of hydrocolloids to help bind said mix to water.

J.A. 355 (emphases added). In addition, Taylor's response included several proposed amendments to the specification corresponding to the new and amended claims. *See* Suppl. App. 289, 294–300.

In a final office action dated March 23, 2009, the examiner rejected all of Taylor's pending claims. In pertinent part, claims 1, 3–7, and 9–14 were rejected as anticipated under 35 U.S.C. § 102(b) by U.S. Patent 5,976,598 ("Akkaway"); claims 2, 8, 15, and 37–58 were rejected as obvious under 35 U.S.C. § 103(a) in view of Akkaway; claims 3, 37–43, 47–49, 51, 53, and 57 were rejected as lacking adequate written description under 35 U.S.C. § 112, ¶ 1; and claim 14 was rejected for lack of enablement under § 112, ¶ 1. The examiner also declined

to enter most of Taylor's proposed amendments to the specification on grounds that those amendments would introduce new matter.

The Board reversed the examiner's enablement rejection as to claim 14 but affirmed the remaining rejections. In particular, the Board held that the terms "low-calorie" and "palatable" found in the preambles of independent claims 1 and 58 are non-limiting because they merely reflect intended uses or purposes without imposing any structural limitation on the claimed compositions. *Board Decision* at 6–7. Thus, the Board concluded that the terms "at least about 30% of fiber that is at least 50% cellulose" and "an effective amount of hydrocolloids to help bind said mix to water" were the only limitations of claim 1 entitled to patentable weight. *Id.* at 7. On the merits, the Board found that (i) Akkaway discloses low-calorie flour replacement compositions comprising coated particulate cellulose capable of replacing all or part of a food's starch component; (ii) Akkaway's cellulose compositions can be mixed with 10% or more hydrocolloid bulking agents such as carboxymethylcellulose, arabinogalactan, xanthan gum, and methylcellulose; and (iii) Taylor's specification discloses an exemplary dough containing only 3.8% hydrocolloid. *Id.* at 3–4. Based on those findings, the Board held that Akkaway anticipated claim 1, and the Board affirmed the examiner's obviousness rejections on similar grounds. *Id.* at 7–9. Regarding the written description rejections, the Board held that Taylor had provided no evidence that one of skill in the art would have recognized the disputed claim limitations as explicitly or inherently supported in the '507 Application's original disclosure. *Id.* at 11–12.

The Board denied Taylor's request for rehearing, and Taylor timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

We review the Board's legal conclusions *de novo* and its factual determinations for substantial evidence. *In re Am. Acad. Sci. Tech Ctr.*, 367 F.3d 1359, 1363 (Fed. Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).

Claim construction is a matter of law. *Am. Acad. Sci.*, 367 F.3d at 1363. In contrast to district court proceedings involving an issued patent, claims under examination before the PTO are given their broadest reasonable interpretation consistent with the specification. *In re ICON Health & Fitness*, 496 F.3d 1374, 1379 (Fed. Cir. 2007). That broader interpretive standard does not prejudice the applicant, who has the ability to correct errors in claim language and to adjust the scope of claim protection as needed during prosecution by amending the claims. *In re Yamamoto*, 740 F.2d 1569, 1571–72 (Fed. Cir. 1984).

Anticipation is a question of fact, *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010), as is the issue of sufficient written description under § 112, ¶ 1, *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Obviousness is a question of law based on underlying factual findings. *In re Gartside*, 203 F.3d 1305, 1315–16 (Fed. Cir. 2000).

*Claim Construction*

The parties' primary dispute centers on whether the terms "low-calorie" and "palatable," as recited in the preambles of claims 1 and 58 of the '507 Application, are limiting. Citing *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002) and related cases,[1] Taylor argues that those terms must be afforded patentable weight because they were introduced and relied upon during prosecution expressly to distinguish the pending claims from Akkaway. The Board held that neither term limits or defines the structure of the claimed compositions, that the preambles merely recite the intended use for the compositions, and that the disputed terms therefore do not constitute substantive limitations under the broadest reasonable interpretation of the pending claims.

We conclude that the terms "low-calorie" and "palatable" are not limiting as used in claims 1 and 58. In general, the preamble limits a claim if it recites essential structure or is otherwise "necessary to give life, meaning, and vitality" to the claim, *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (quoting *Kropa v. Robie*, 187 F.2d 150, 152 (CCPA 1951)), while the preamble is not limiting when the claim body defines a structurally complete invention and the preamble states

---

[1] Taylor also cites the following cases to the same effect: *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1362 (Fed. Cir. 2004); *W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1353 (Fed. Cir. 2004); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 830 (Fed. Cir. 2003); *Invitrogen Corp. v. Biocrest Manufacturing, L.P.*, 327 F.3d 1364 (Fed. Cir. 2003); *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed. Cir. 2002).

only a purpose or intended use, *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). Here, the bodies of claims 1 and 58 define the requisite components of the claimed compositions—specified proportions of fiber and hydrocolloid—and we do not perceive, nor has Taylor explained, how stating that such compositions are "for making low-calorie, palatable foods" further limits the scope of protection sought, *i.e.*, excludes compositions that would otherwise satisfy the recited structural requirements.

The Board thus correctly discerned that the preambles of claims 1 and 58 are not limiting, and Taylor misapprehends *Catalina* and related cases in his arguments to the contrary. *Catalina* set forth "some guideposts" for evaluating whether a particular claim's preamble limits claim scope; among those, we included the general proposition that "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." 289 F.3d at 808. Taylor seizes on that "guidepost" as categorically determinative, arguing that *Catalina* compels the examiner, the Board, and ultimately this court to construe the disputed preamble terms as limiting because he sought to distinguish Akkaway before the examiner based in part on those terms. But *Catalina*, and indeed all of the other decisions that Taylor cites, arose in the context of infringement litigation, where prosecution is closed and the court's task is to divine the meaning of issued claims under a narrower interpretive standard. Here, where prosecution remains open and Taylor retains the option of amending the claim as needed, the Board correctly rejected Taylor's rigid reading of *Catalina* to conclude that the preambles of claims 1 and 58 of the '507 Application

are not limiting under the broadest reasonable interpretation of those claims.

*Prior Art Rejections*

The bulk of Taylor's arguments against the rejections based on Akkaway presume patentable weight for the terms "palatable" and "low-calorie" in the preambles of claims 1 and 58. As discussed, those terms are not limiting, and we therefore need not address those arguments here. Taylor advances an additional argument, however, that Akkaway fails to disclose "cellulose" as claimed in claim 1. Taylor contends that Akkaway describes a coated, hydrophobic cellulose that is "not readily obtainable on the open market" and is "much unlike the normal cellulose described in the Taylor specification." Therefore, according to Taylor, the '507 Application "already implicitly constricts claim 1" to exclude such coated cellulose and distinguish over Akkaway.

Taylor's argument is not persuasive. Our focus lies on the claim language, and claim 1, as currently drafted, offers no basis for distinguishing Akkaway's coated cellulose, which—as even Taylor acknowledges—comprises cellulose. Notwithstanding Taylor's arguments suggesting an "implied negative limitation," claim 1 broadly recites "cellulose" without restriction regarding particular subtypes of cellulose or methods for its preparation. As the Board found, Akkaway thus meets the "cellulose" limitation of claim 1, and Taylor cannot distinguish Akkaway based on unrecited limitations.[2] We therefore affirm the rejection of claim 1 under 35 U.S.C. § 102(b).

---

[2] The examiner suggested amendments to distinguish Taylor's claims from the cellulose disclosed by

Taylor did not separately argue the novelty of claims 3–7 and 9–14, so the Board properly upheld the examiner's anticipation rejections of those claims. Regarding the obviousness rejections against claims 2, 8, 15, and 37–57, Taylor reiterated the same arguments presented with regard to claim 1, and thus we conclude that the Board properly upheld those rejections as well.

Finally, Taylor argues that the Board erred in upholding the examiner's rejection of claim 58 for obviousness. In addition to the cellulose and hydrocolloid limitations found in claim 1, claim 58 recites the following: "upon appropriate exposure to microelectric oscillating electric fields, form non-disulphide-bonded cross-linked polymers that help strengthen said dough during the cooking process." J.A. 305. Relying on that language, Taylor argues that the rejection of claim 58 must be reversed because the examiner presented no data to show that microwave cooking can form such polymers. The Board affirmed the rejections, holding that the results of microwave cooking described in claim 58 represent no more than a non-limiting recitation of intended use with respect to the claimed dough composition. Even so, the Board continued, microwave cooking was well known in the art such that persons of relevant skill knew that non-disulfide bonded cross-linked polymers form in dough upon heating.

We agree with the Board that at the time the '507 Application was filed in 2006, it would have been obvious to one of skill in the art to heat or cook food using a microwave as recited in claim 58. Moreover, since Akkaway discloses each component of the claimed dough

Akkaway, but Taylor chose to rely exclusively on perceived "implicit" limitations in the claims. J.A. 803.

(*i.e.*, the fiber and hydrocolloid), such heating would necessarily have produced the same cross-linked polymers in the prior art Akkaway composition. The Board therefore did not err in upholding the rejection of claim 58.

### *Rejections for Lack of Written Description*

Under § 112, ¶ 1, claims must find sufficient support in the written description, such that the disclosure "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms.*, 598 F.3d at 1351. Taylor contests the examiner's rejections of claims 3, 37–43, 47–49, 51, 53, and 57 as lacking sufficient written description. As described above, however, we have affirmed rejections against each of the pending claims based on prior art, so we need not consider the examiner's additional rejections under § 112, ¶ 1.

### CONCLUSION

We have considered Taylor's remaining arguments and find them unpersuasive. Accordingly, the final decision of the Board is *affirmed*.

**AFFIRMED**