NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: CHRISTOPHER JOHN RUDY,**

*Appellant*

---

2018-2106

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 10/360,681.

---

Decided: July 18, 2019

---

CHRISTOPHER JOHN RUDY, Port Huron, MI, pro se.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by MARY L. KELLY, JOSEPH MATAL, COKE MORGAN STEWART.

---

Before DYK, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Christopher John Rudy appeals a decision of the Patent Trial and Appeal Board (the "Board"), upholding the Patent Examiner's rejection of claims 48, 50–52, and 55–56 of U.S. Patent Application No. 10/360,681 ("the '681 application"). We conclude that the Board erred by holding

claim 52 anticipated by the asserted prior art, but we discern no reversible error in the Board's determinations with respect to claims 48 and 50. Accordingly, we vacate the decision of the Board with regard to claim 52 and remand for further proceedings consistent with this opinion. Because claims 55 and 56 depend from claim 52, we also vacate the Board's decision with respect to those claims.

BACKGROUND

I

The claims of the '681 application are directed to a "web-mounting fishing plug comprising a body having a slot or aperture into which a web can be inserted." J.A. 17. According to the specification, a web is an insert such as a postage stamp, photograph, drawing, or piece of foil that can "enhance [the plug's] appeal to the fisherman and perhaps even the fish." J.A. 29. The claimed invention is designed to be "readily adaptable for conveniently mounting a web from a wide variety of webs," thus permitting the addition of customized webs as well as devices producing light, movement, sound, or smell. J.A. 18. Figure 1 and Figure 3 of the '681 application disclose a front and side view of an embodiment of the claimed web-mounting fishing plug:



J.A. 36. In this embodiment, the body 10 is generally solid and has a slot 11 into which web can be inserted. J.A. 23. In another embodiment, depicted in Figure 9, the web receiving slot is circular:



J.A. 36.

Claim 48 reads as follows:

48. A web-mounting fishing plug comprising a plug body of a solid material that at least in part can transmit light; and, in the plug body, a narrow slot essentially along a front to rear or rear to front direction – wherein:

the plug body is substantially thicker than the narrow slot;

the narrow slot is:

blind on one end from the plug body and open on an opposite end to the blind end such that from the open end to the blind end a first dimension is defined along a first direction;

characterized in having a first wall having a linear and/or curved second dimension along a linear and/or curved second direction substantially perpendicular to the first direction and a second wall conforming in shape to that presented by the first wall by registering substantially therewith but spaced apart closely from the first wall to define a third dimension between

the first and second walls such that the first dimension and the second dimension are both substantially greater than the third dimension; and

the plug further comprises the following:

the thin web inserted into the narrow slot;

a closure attached to the plug body, which covers the narrow slot to protect the thin web from moisture when fishing with the plug;

at least one eye for receiving fishing line associated with the plug body; and

attached directly or indirectly to at least one of the plug body and the closure, at least one fishing hook.

J.A. 589.

Claim 50 and 51 recite:

50. The plug of claim 48, wherein the web is a photograph including a person, a postage stamp, a trading stamp, a tax stamp, a cartoon, a fishing license, a business card, paper currency, or a sheet including a logo.

51. The plug of claim 48, which further comprises the following:

in the plug body, a cavity separate from the slot into which an insert additional to the thin web inserted into the narrow slot, which is selected from the group consisting of a sound-emitting insert, a light-emitting insert, a movement-providing insert, and a smell emitting insert; and

the insert additional to the thin web in-
serted into the narrow slot.

J.A. 589–90.

Claim 52 includes many of the same limitations as the above claims, but recites a "kit from which a web-mounting fishing plug can be assembled in a home environment, which comprises," in relevant part: (1) "one and only one plug body," (2) "at least one eye for receiving fishing line," (3) "a closure that can be attached to the plug body," and (4) "at least one fishing hook" attachable to the plug body or closure.  J.A. 590.  Claim 52's requirement of "one and only one plug body" is not found in claims 48, 50, or 51. Claim 55 adds to the kit of claim 52 the features of claims 50 and 51, and claim 56 further adds that the "closure can be attached to the plug body with the inclusion of threading of the closure to the plug body through provision of threads on the closure itself corresponding to threads on the plug body itself."  J.A. 591.

## II

Mr. Rudy primarily challenges the Board's affirmance of the Examiner's rejection of claims 48 and 52 as antici-pated by U.S. Patent No. 3,423,868 (Le Master).  Le Master discloses a "tail portion for the main body of a fishing lure" that is "adapted to produce an animated motion attractive to fish."  J.A. 638 col. 1 ll. 12, 23–24.  Le Master's lure

comprises a main body 1 attached by eye bolts 6 to a tail assembly 5:



FIG .1

J.A. 637. As shown in Figures 3 and 4 of Le Master (reproduced below), tail assembly 5 comprises a "tapered hollow tail" body 7 having an interior space 9 and a coaxial central post 8. J.A. 638 col. 1 l. 66–col. 4 l. 20.

**Fig. 3**





FIG .4

J.A. 637.

The Examiner found, and the Board agreed, that Le Master disclosed each and every limitation of claims 48 and 52. In particular, with respect to claim 48, the Board found that Le Master disclosed a "fishing plug," and that Mr. Rudy had not provided evidentiary support that would distinguish a fishing plug from Le Master's tail portion of a fishing lure. The Board also found that Le Master disclosed a "narrow slot" that met all of the dimensional limitations set forth in claim 48, which also satisfied the limitation in claim 48 that the plug body be "substantially thicker than the narrow slot."

With respect to claim 52, the Board found that "it is evident from the description of the tail assembly that the components make up a kit and that the tail assembly would be assemblable essentially anywhere, including at a person's home." J.A. 6. The Board also found that Le Master disclosed the limitation that the kit include "one and only one plug body," as "Le Master may be regarded as being made up of a head body 1 and a plug body 7, and . . . plug body 7 is only a single plug body." J.A. 6. The Board further noted that Mr. Rudy did "not contest this characterization of Le Master." J.A. 7.

Mr. Rudy appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Mr. Rudy raises several challenges to the Board's determination that Le Master anticipates claims 48 and 52.[1]

---

[1] Mr. Rudy has also challenged the Board's affirmance of the Examiner's rejection of dependent claims 50–51 and 55–56 as obvious over Le Master in view of other prior art references. The majority of his arguments, however, are premised on his view that Le Master does not disclose

On appeal, Mr. Rudy bears the burden of proving that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Anticipation under 35 U.S.C. § 102(b) is a question of fact, reviewed for substantial evidence. *In re Gleave*, 560 F.3d 1331, 1334–35 (Fed. Cir. 2009).

First, Mr. Rudy argues that Le Master does not disclose a "fishing plug" as required by the claims, and instead discloses a tail assembly in an articulated lure. As evidence, Mr. Rudy points to a citation to a Wikipedia article in his brief to the Examiner that states that a fishing plug "is an artificial fishing lure used primarily for casting, which typically has a gang hook or hooks." J.A. 571. The article also reportedly states that a fishing plug is "a popular type of hard-bodied fishing lure" and that the term "plug" is "usually used for shorter, deeper-bodied lures which imitate deeper-bodied fish, frogs and other prey." *Id.*

The Board affirmed the Examiner's finding that Le Master's tail assembly discloses all of Mr. Rudy's cited elements of a fishing plug, in that it is hard-bodied, is intended to be cast into the water, and has gang hooks attached thereto. The Board also noted that Mr. Rudy had failed to provide full copies of the evidence he relied upon, which limited its review. We agree that Mr. Rudy has not provided sufficient evidentiary support to distinguish the claimed "fishing plug" from the type of lure described in Le Master. Without further evidence that a person of ordinary skill in the art would understand the word "fishing plug" to exclude Le Master's tail assembly, or a specific definition of the word "fishing plug" in the specification, we

---

every element of independent claims 48 and 52. We have also considered Mr. Rudy's arguments that are specific to only the dependent claims, but find them unpersuasive.

see no error in the Board's decision affirming the Examiner's rejection.

Mr. Rudy also argues that Le Master's tail piece alone cannot anticipate his claims, because without Le Master's main body attachment, the tail piece will not achieve its intended purpose of producing an animated motion attractive to fish. The requirement for anticipation, however, is that the prior art reference disclose "each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharmaceuticals*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). So long as Le Master's tail assembly discloses all the claimed features, it anticipates Mr. Rudy's claims. Because claims 48 and 52 do not require that the fishing plug produce an animated motion attractive to fish, this feature of Le Master is irrelevant to the question of anticipation.

Mr. Rudy next argues that Le Master does not disclose the limitation in claims 48 and 52 that the walls of the slot be substantially parallel to each other, as the slot in Le Master is tapered to a narrow point. Contrary to Mr. Rudy's argument, however, claims 48 and 52 are not so limited. Instead, the claims state that the second wall of the narrow slot "conform[s] in shape to that presented by the first wall by registering substantially therewith." J.A. 589. As reasonably found by the Examiner, the fact that Le Master's slot has tapered ends has no bearing on whether the walls of Le Master's interior space register substantially with one another. We thus conclude that substantial evidence supports the Examiner's finding that the walls of Le Master's interior space satisfy this claim limitation.

Similarly, Mr. Rudy argues that Le Master does not disclose the limitation that "the plug body is substantially thicker than the narrow slot." In particular, Mr. Rudy argues that Le Master does not meet the dimensional requirements of the narrow slot disclosed in claims 48 and 52, as the width of the *outer wall* of the plug body is not

substantially thicker than the width of narrow slot. However, the dimensional limitations of claims 48 and 52 only require that the length of the wall of the slot from the open end to the closed end (the "first dimension") and the perpendicular width of that wall (the "second dimension") be substantially greater than the distance between the two walls of the slot defining the air space (the "third dimension"). *See* J.A. 589. Substantial evidence supports the Board's finding that Le Master meets these requirements. While Mr. Rudy attempts to limit the "plug body" that must be substantially thicker than the narrow slot to the outer walls of the plug body, the plain language of the claims does not compel such a restriction. It is thus reasonable to interpret Le Master's plug body, when both the walls and coaxial central post are considered, as being "substantially thicker" than the narrow slot.

Looking specifically at claim 52, Mr. Rudy argues that Le Master does not disclose or describe a kit assembly for its fishing lure. As the Board properly pointed out, however, Le Master presents the invention as an assortment of components that can be assembled at any location. J.A. 6. The description of a "kit" that "can be assembled for home use" in the preamble is the exact type of intended use we have consistently held does not limit claim scope. *See Catalina Marketing Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("[A] preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'" (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997))). Accordingly, Le Master need not expressly disclose a kit for home assembly in order to anticipate claim 52. Instead, as the Board indeed found, Le Master need only disclose the necessary components of the claimed kit that are capable of assembly in a home environment.

Mr. Rudy finally argues that Le Master cannot anticipate claim 52 because claim 52 expressly limits the kit to

include "one and only one plug body," while Le Master discloses a plug body consisting of two pieces. We agree with Mr. Rudy. The Board erred in its adoption of the Examiner's analysis of this claim limitation. The Examiner's characterization of Le Master as potentially describing a "head body" and a "plug body" is contradicted by Le Master itself, which describes the invention as a "tail portion for the main body of a fishing lure." J.A. 638 col. 1 l. 12. The Examiner's renaming of Le Master's components does not change the fact that the "body" in Le Master includes both the "tail portion" and the segment to which the tail portion is attached.[2] While it may be that Le Master's disclosure of both a main body and a tail could together constitute "one and only one plug body," this is not the ground that the Examiner relied on in its rejection, nor the Board in its affirmance. We therefore remand to the Board to consider whether claim 52's limitation of "one and only one plug body" requires that the plug body consist of a single component, or whether Le Master's disclosure of a plug body consisting of two separate components suffices to disclose this limitation. As the Board's affirmance of the Examiner's obviousness rejections of dependent claims 55–56 relied on Le Master's disclosure of this limitation, we also vacate the Board's decision with respect to those claims.

### CONCLUSION

For the foregoing reasons, we affirm the Board's opinion with respect to claims 48 and 50–51, vacate the Board's opinion with respect to claims 52 and 55–56, and remand for further proceedings consistent with this opinion.

---

[2] While the Board states that Mr. Rudy did not contest this characterization of Le Master's components, J.A. 6–7, Mr. Rudy unequivocally argued that two separate components could not satisfy the limitation of "one and only one plug body," J.A. 573, 634.

**AFFIRMED IN PART, VACATED AND REMANDED
IN PART**

Costs

No costs.